IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESLIE ANN STITES,                          )   Civil No.: 3:14-cv-01211-JE
                                            )
                    Plaintiff,              )   OPINION AND ORDER
                                            )
           v.                               )
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
                    Defendant.              )
_____         )

        Nelson R. Hall
        Bennett, Hartman, Morris & Kaplan, LLP
        210 SW Morrison Street, Suite 500
        Portland, OR 97204
                    Attorney for Plaintiff


        Billy J. Williams, Acting U.S. Attorney
        Janice Hebert, Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204


        Franco Becia
        Special Asst. U.S. Attorney
        Office of the General Counsel
        Social Security Administration
        701 5th Avenue, Suite 2900 M/S 221 A
        Seattle, WA 98104-7075


                    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Leslie Ann Stites brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below the Commissioner's decision is affirmed.

## Procedural Background

Plaintiff filed an application for a period of disability and DIB on November 25, 2008, alleging she had been disabled since November 1, 2006. After her claim was denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing. On January 19, 2011, a hearing was held before Administrative Law Judge (ALJ) Charles Evans. Plaintiff; Thomas Weiford, a Vocational Expert (VE); and Dr. Julie Frederick, Ph.D., an impartial medical expert (ME) testified at the hearing. On January 28, 2011 the ALJ issued an unfavorable decision and Plaintiff appealed.

On May 2, 2012, the Appeals Council issued an Order vacating the ALJ's decision and remanding the case for further administrative proceedings. On December 3, 2012, a hearing was held before ALJ Riley Atkins.  Plaintiff and VE Susan Burkett testified at the hearing.

In a decision dated December 20, 2012, ALJ Atkins found that Plaintiff had not been disabled at any time from her alleged onset date through the date of the decision. The Appeals Council denied Plaintiff's request for review on May 30, 2014, rendering the ALJ's decision the final decision of the Commissioner.

**Background**

Plaintiff was born in 1963 and was 49 years old at the time of the ALJ's decision after remand. She graduated from high school and attended two years of college. She has past relevant work as a fast food worker, waitress, cashier, sewing machine operator, telephone solicitor, cleaner and caregiver.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**Medical Record and Testimony**

The court has carefully reviewed the medical record and testimony and the parties are familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

OPINION & ORDER – 4

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2012.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on November 1, 2006. The ALJ noted that, according to Plaintiff's testimony, she worked for Taco Bell for approximately seven months in 2007-2008. However, the ALJ found that Plaintiff's earnings from this work did not meet the threshold for substantial gainful activity.

At the second step, the ALJ found that Plaintiff's depression, anxiety, fibromyalgia and obesity were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light work except that

> [s]he can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. She can stand and/or walk approximately six hours with normal breaks during the workday. She has no sitting limitations. She should not be required to climb, other than stairs and ramps. She would work best in a simple routine work environment. She is limited to no more than occasional public contact. She should avoid exposure to hazards, dangerous machinery, and heights in the workplace.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not credible to the extent they were inconsistent with the above RFC.

Based upon the testimony of the VE, at the fourth step of his disability analysis the ALJ

OPINION & ORDER – 5

found that Plaintiff was unable to perform any of her past relevant work.

At the fifth step, the ALJ found that Plaintiff retained the functional capacity required to perform jobs that existed in significant numbers in the national economy. Based upon the VE's testimony, the ALJ cited cannery worker, laundry folder and garment sorter as examples of the work Plaintiff could perform. Based upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

rejecting her testimony; improperly rejected the opinion of treating physician, Dr. Rosa Garcia-

Jordan; and improperly discounted the opinion of the administrative hearing ME, Dr. Frederick.

## I. **Plaintiff's Credibility**

## A. Applicable Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical

evidence of an underlying impairment that is reasonably expected to produce some degree of the

symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide

"clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80

F.3d 1273, 1281 (9th Cir.1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006).[1] If

substantial evidence supports the ALJ's credibility determination, that determination must be

upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner

of Social Security, 533 F.3d 1155, 1162 (9th Cir.2008).

The ALJ must examine the entire record and consider several factors, including the

claimant's daily activities, medications taken and their effectiveness, treatment other than

medication, measures other than treatment used to relieve pain or other symptoms, and "any

---

[1] The Commissioner argues a more deferential standard applies, citing Molina v. Astrue, 775 F.3d 1104, 1136 (9th Cir. 2012) for the proposition that merely reasonable conclusions drawn from the evidence suffice. Def.'s Br. 7, n.1. I decline to accept the Commissioner's argument. See Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96–7. An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.2008).

**B. Analysis**

Plaintiff testified that her depression, anxiety and chronic pain prevented her from working. Tr. 72, 77. Plaintiff alleged her depression caused her to feel physically sick, she had no energy or desire to do anything, her body ached and she felt like she had the flu. She alleged that arthritis and fibromyalgia caused her significant pain.  Plaintiff also alleged that she experienced 1-2 panic attacks per month, which she relieved by going to her bedroom or reading and that it was hard for her to work around others because she felt she was being scrutinized.

Because Plaintiff produced medical evidence of an underlying impairment that was reasonably expected to produce some degree of the symptoms she alleged and there was no affirmative evidence of malingering, the ALJ was required to provide "clear and convincing reasons" for his adverse credibility determination.

The ALJ offered a number of reasons supporting his credibility determination. He noted that Plaintiff's allegations concerning the limiting effects of her symptoms were inconsistent with her activities of daily living, with the medical record, and with her work activities. The ALJ also discounted Plaintiff's credibility because he found that she had not followed recommended

medical treatment, that many of her mental health issues were due to "situational stressors" and that her criminal history "reflect[ed] unfavorably on her veracity and truthfulness." Tr. 21.

An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities of daily living. Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002). In evaluating Plaintiff's credibility, the ALJ cited activities of daily living that were inconsistent with Plaintiff's testimony concerning the severity of her symptoms and impairments. The ALJ noted, and the record reflects, that Plaintiff prepared meals, showered and dressed herself daily, drove a car and was teaching her daughter to drive, shopped for groceries, performed household chores, cared for her two daughters, went out with friends once or twice a week, attended Alcoholics Anonymous meetings three times a week where she occasionally acted as chairperson and treasurer and made trips to California to visit family. Tr. 18, 21, 76, 310, 312, 516, 518, 567, 662-663.

Even if these activities do not rise to the level of transferable work skills, they are inconsistent with allegations of completely debilitating impairment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir.2012) (ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment") (citations omitted). Accordingly, the inconsistencies between Plaintiff's activities of daily living  and her complaints was a clear and convincing reason to find her testimony not credible with regard to her symptoms.

In addition, the ALJ appropriately found the credibility of Plaintiff's statements undermined by her criminal history. A plaintiff's reputation for truthfulness is a valid consideration for an ALJ in determining that plaintiff's credibility. Thomas, 278 F.3d at 958. Plaintiff's convictions for theft and writing bad checks are crimes involving dishonesty. These

convictions, along with charges of methamphetamine possession, occurred during the period Plaintiff was alleging disability and little more than five years prior to the ALJ's decision. Accordingly, the ALJ did not err in discrediting Plaintiff's statements based on her prior criminal history. See Crowell v. Astrue, No. 3:11-CV-00094-HU, 2012 WL 6706023, at *25 (D. Or. Sept. 12, 2012), report and recommendation adopted, No. 03:11-CV-00094-HU, 2012 WL 6706063 (D. Or. Dec. 26, 2012)(upholding adverse credibility determination based, in part, on plaintiff's history of arrests and/or convictions related to stealing and forgery); see also Newport v. Astrue, No. EDCV 11-180-JEM, 2012 WL 1044487, at *5-6 (C.D. Cal. Mar. 28, 2012)(upholding adverse credibility determination based, in part, on the claimant's history of arrests for theft and possession of drugs).

The ALJ here provided clear and convincing reasons, supported by substantial evidence for finding Plaintiff's statements less than fully credible. As such, this Court need not discuss all of the reasons provided by the ALJ since at least one legally sufficient reason exists. See Carmickle, 533 F.3d at 1162–63. The ALJ's credibility finding, therefore, is affirmed.

## II. Evaluating Medical Opinion

### A. Applicable Standards

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti, 533 F.3d at 1041. In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).

In order to reject the opinions of non-examining physicians, an ALJ need only provide "reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244

(9th Cir. 1998)(citations omitted). However, because treating physicians have a "greater opportunity to know and observe" their patients, their opinions are given greater weight than the opinions of other physicians. Smolen, 80 F.3d at 1285.  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830–31 (9th Cir.1995), and must provide "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)(citations omitted). Nevertheless, a treating physician's opinion is not conclusive as to the ultimate question of disability. Morgan v. Comm'r. of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(citations omitted).

**B. Treating Physician Dr. Garcia-Jordan**

As noted above, Plaintiff contends the ALJ improperly rejected the opinions of her treating physician, Dr. Garcia-Jordan.

Dr. Garcia-Jordan began treating Plaintiff in 2009. In September, 2010 she drafted a letter in which she opined that Plaintiff "is unable to work in any capacity." Tr. 549. In November, 2010, Dr. Garcia-Jordan completed an assessment form in which she indicated that Plaintiff suffered from "severe anxiety and depression," and fibromyalgia. In check-box responses, she opined that Plaintiff was "markedly limited" in maintaining attention  and concentration for extended periods of time; performing activities within a schedule; sustaining an ordinary routine without special supervision; and in completing a normal workday or workweek without interruption from psychological symptoms. Dr. Garcia-Jordan also opined that Plaintiff was not significantly limited in her ability to understand and remember detailed instructions; carry out

very short and simple instructions and carry out detailed instructions. She indicated that Plaintiff

had no limitations in social functioning. Tr. 632-34.

In November, 2012, Dr. Garcia-Jordan submitted another letter in which she addressed

internal inconsistencies in her November 2010 assessment by explaining that "[Plaintiff] is able

to ask questions, follow directions and interact with the general public. She has a poor attention

span and impaired concentration which will additionally impact ability to maintain any

reasonable work." Tr. 691. Dr. Garcia-Jordan wrote that the limitations she referenced in 2010

remained accurate and that "[a]lthough, there may be brief periods when [Plaintiff's] functioning

improves, she decompensates quickly when faced with stressors." Id. She opined that Plaintiff

would have "great difficulty sustaining employment in any work setting because of depression

and anxiety." Id.

The ALJ gave Dr. Garcia-Jordan's opinion "little weight" because he found it was

inconsistent with her treatment notes.  As an example, he cited a February 2011 treatment note in

which Dr. Garcia-Jordan remarked that Plaintiff's anxiety/panic disorder  and agoraphobia were

"markedly improved" on Abilify. Tr. 19, 684. During that same visit she noted that Plaintiff

appeared in "[n]o acute stress. Alert and oriented. Able to speak full sentences. Appears much

calmer than usual. No pressured speech. Speech pattern is normal. She does not appear agitated."

Tr. 684. The ALJ also cited treatment notes that indicated Plaintiff's fibromyalgia was "stable"

with medication, that she denied suicidal ideation and that she had travelled to California

annually to visit family.

Both Plaintiff and the Commissioner cite to additional evidence in the record that they

assert supports their respective arguments regarding whether Dr. Garcia-Jordan's treatment notes

were consistent with the opinions rejected by the ALJ. This court is constrained to review only

the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003). However, a reviewing court must consider the entire record as a whole and where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.2006); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005). After thoroughly reviewing the record, I conclude that the ALJ's reliance on the cited inconsistencies between Dr. Garcia-Jordan's opinion and her treating records was legally sufficient and supported by substantial evidence.

The ALJ also discounted Dr. Garcia-Jordan's opinion because he found that she "deferred any extensive mental health input to a mental health specialist because such opinions and treatment are outside her area of expertise." Tr. 19. It is clear from the record that as one of Plaintiff's treating providers, Dr. Garcia-Jordan was involved in treating Plaintiff's mental impairments. Ordinarily, the court considers a physician competent to testify on psychiatric conditions when the conclusions are based on clinical observations. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987). However, the record also is clear that Dr. Garcia-Jordan specifically indicated that in completing the social security questionnaire she would defer to the input and expertise of a mental health specialist. The ALJ considered the opinion of State agency reviewing psychological consultant Dr. Joshua Boyd more reliable based upon Dr. Boyd's expertise and the broader record he had available to him upon which to base his conclusions. It is the ALJ's responsibility to assess and weigh the medical evidence. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2008)(ALJ responsible for resolving conflicts in medical testimony). Under the circumstances, it was not improper for the ALJ to discredit Dr. Garcia-Jordan's

opinions regarding Plaintiff's mental health as outside her area of expertise. Cf. 20 C.F.R. §
404.1527(d)(5).

The ALJ provided specific and legitimate reasons supported by substantial evidence in
the record for giving less weight to Dr. Garcia-Jordan's opinion. Accordingly, the ALJ did not
err in his evaluation of Dr. Garcia-Jordan's opinion.

## C. Administrative Hearing Medical Expert Dr. Frederick

Dr. Julie Frederick, Ph.D. testified as a medical expert at the January 19, 2011
administrative hearing. She opined that Plaintiff had mild difficulties in activities of daily living;
moderate difficulties in social functioning; marked difficulties in concentration, persistence and
pace; and experienced 1-2 episodes of decompensation. Tr. 20.

The ALJ gave "moderate weight" to Dr. Frederick's opinion because she was a "medical
doctor who had the benefit of reviewing treatment records from several medical sources and had
a longitudinal picture of claimant's health." Id. However, he found that her opinions that Plaintiff
had experienced 1-2 episodes of decompensation and had marked difficulties in concentration,
persistence, or pace were not supported by the record. Id. Specifically, the ALJ noted that
Plaintiff had never been hospitalized due to her mental impairments and she reported that she
drives a car and is able to relieve her mental symptoms by going to her bedroom or reading. Id.

Plaintiff only challenges the ALJ's discounting of Dr. Frederick's opinion regarding her
"marked" limitations in concentration, persistence and pace, arguing that he failed to explain
why the activities he cited undermined Dr. Frederick's opinion. However, as noted above, in
order to reject the opinion of a non-examining physician, the ALJ need only reference specific
evidence in the record. Sousa, 143 F.3d at 1244.  Here, the ALJ cited evidence that Plaintiff was
able to drive a car.  Elsewhere in his decision the ALJ discussed Plaintiff's limitations with

regard to concentration, persistence, or pace and noted that Plaintiff reported she watches television, reads books and is able to follow written and spoken instructions "good." Tr. 15, 312, 313. He also cited medical record evidence that noted Plaintiff was able to perform one and two-step commands. Tr. 15, 516. The ALJ determined that Plaintiff's ability to engage in these activities did not support a finding of "marked" limitations in concentration, persistence, or pace. Even if there is evidence that supports more than one rational interpretation, the court must defer to the ALJ's decision. Batson v. Comm'r. of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir.2004.) Accordingly, this court defers to the ALJ's evaluation of Dr. Frederick's opinion.

### III. Plaintiff's RFC

Plaintiff contends the ALJ erred in assessing Plaintiff's RFC because the opinions of medical sources upon which he relied to support his finding did not constitute substantial evidence.

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Plaintiff argues that the ALJ improperly gave "great weight" to the opinion of State agency reviewing psychological consultant Dr. Joshua Boyd. In July, 2009 Dr. Boyd completed

OPINION & ORDER – 15

a Psychiatric Review Techinique (PRT) form and Mental Residual Functional Capacity

Assessment (MRFCA) concerning Plaintiff. Tr. 526-542. Plaintiff contends that Dr. Boyd's

opinion cannot constitute substantial evidence in support of the ALJ's RFC determination

because he reviewed "very little evidence of record" and failed to provide any explanation for his

opinion or define the ratings he assigned Plaintiff.

Plaintiff's arguments are unavailing. Dr. Boyd completed his assessments in July of 2009

and notes that the assessment covers the time period between May 1, 2008 and the date of the

assessment. Tr. 526, 540. He discusses with specificity medical records that document Plaintiff's

condition during that period of time. Defendant correctly notes that Plaintiff has failed to

demonstrate how Dr. Boyd's medical opinion regarding her limitations during the time covered

by his assessment was inaccurate and therefore not substantial evidence. Furthermore, although

Dr. Boyd, himself, does not define the ratings he assigned Plaintiff, the forms he completed are

Agency forms and, as noted by the ALJ, Dr. Boyd is an expert in evaluating Social Security

applications. Tr. 20. The Agency itself defines the terms set out in both the PRT and MRFCA

See SSA Program Operations Manual System DI 24510.063; 24505.025(F) and thus the

definitions were available and, arguably, familiar to both the ALJ and Dr. Boyd. The ALJ did not

err in relying on Dr. Boyd's opinion to support his RFC determination.

Plaintiff also challenges the ALJ's evaluation of findings made by examining

psychologist, Cheryl Brischetto, Ph.D., and the opinions provided by Licensed Clinical Social

Worker, Scott Hines. She argues that the ALJ failed to consider evidence contained in these

medical source opinions that was helpful to Plaintiff and thus mischaracterized the evidence.

Plaintiff's challenges to the ALJ's treatment of these medical opinions essentially ask this

court to arbitrate a battle of evidence interpretation. That is not the court's role here. It is true that

there is evidence in the record both helpful and detrimental to Plaintiff's claim of disability. However, it remains solely the province of the ALJ to resolve conflict in the record and decide which medical opinions to credit. Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751. Furthermore, "[t]he key question is not whether there is substantial evidence to support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that the claimant is not disabled." Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir.1997). As discussed above, the ALJ's interpretation of the evidence here was reasonable and thus his RFC determination was supported by substantial evidence. Batson, 359 F3d at 1197(ALJ need not include in RFC opinion evidence that is properly discounted). Accordingly, his determination will not be set aside by this court. See Burch, 400 F.3d at 679 (where the evidence supports multiple conclusions, including the ALJ's reasonable interpretation, the ALJ's interpretation must be upheld); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.2001) (even where the record evidence is somewhat equivocal, a court should not second-guess the ALJ's judgment when it is supported by substantial evidence).

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is AFFIRMED and this action is DISMISSED.

DATED this 27th day of June, 2016

 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge